## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHARLES WARD,
                    Petitioner,

v.                                                  Case Number: 04-73286

RAYMOND BOOKER,
                    Respondent.                     HONORABLE PATRICK J. DUGGAN

_____/


## OPINION AND ORDER
At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on May 30, 2006.

PRESENT:  THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Petitioner Charles Ward has filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Petitioner, who is currently released on parole, challenges

his conviction for possession of 50 to 225 grams of cocaine.  Because Petitioner fails to

show that the state court's decision affirming his conviction was contrary to or an

unreasonable application of Supreme Court precedent, the Court denies the petition.

### I.

The Michigan Court of Appeals summarized the facts giving rise to Petitioner's

conviction as follows:

> After observing a suspected drug transaction, the police chased a suspect who
> was carrying a bag of narcotics into a house located at 6712 Seminole in
> Detroit.  Once inside the house, the officers observed a large amount of
> cocaine in plain view on a table.  Defendant and two other men were sitting at
> the table.  The original suspect escaped through an upstairs window.

According to one of the police officers, defendant ran to the bathroom and flushed a quanity of powder down the toilet. Defendant left a visible powder trail of cocaine as he ran. Defendant dropped the remaining material, 88.71 grams of cocaine, on the floor and was placed under arrest. The police subsequently obtained a search warrant and conducted a thorough search of the house. During their search, the police recovered a large quantity of cocaine and heroin, along with drug paraphernalia, scales, packaging materials, firearms and cash.

*People v. Ward*, No. 232241, slip op. at 1 (Mich. Ct. App. Apr. 15, 2003).

## II.

Following a jury trial in Genesee County Circuit Court, Petitioner was convicted of possession of 50 to 225 grams of cocaine. On May 10, 2001, Petitioner was sentenced to ten to twenty years imprisonment.[1]

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.     The trial court clearly erred in finding that defendant did not have standing to object to the warrantless search and seizure and arrest; defendant was denied his Fourth Amendment right to be free from unreasonable searches and seizures, and his arrest was illegal.

II.    The charges against defendant should be dismissed because defendant was denied his constitutional right to a speedy trial.

III.   Defendant was denied a fair trial by the introduction of a great deal of irrelevant, highly inflammatory evidence, including large amounts of drugs and weapons not connected to defendant, and testimony concerning the street value of a kilo of cocaine.

---

[1] Prior to trial, Petitioner filed an Application for Leave to File an Interlocutory Appeal in the Michigan Court of Appeals, challenging the trial court's denial of his motion to suppress. The Michigan Court of Appeals denied the application for leave to appeal because it was not persuaded of the need for immediate appellate review. *People v. Ward*, No. 224884 (Mich. Ct. App. March 29, 2000).

2

IV.     Defendant was denied a fair trial by the trial court's instruction that defense counsel asked a misleading question.

The Michigan Court of Appeals affirmed the conviction.  *People v. Ward*, No. 232241 (Mich. Ct. App. Apr. 15, 2003).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Ward*, 469 Mich. 969, 671 N.W. 2d 882 (Mich. Nov. 24, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims raised in state court.

**III.**

**A.**

Federal courts apply the following standard of review when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[2]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision

---

[2]    28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

4

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409,

120 S. Ct. at 1521.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should
> ask whether the state court's application of clearly established federal law was
> objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment that the relevant
> state-court decision applied clearly established federal law erroneously or
> incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 410-11, 120 S. Ct. at 1521-22.

## B.

In his first claim for habeas corpus relief, Petitioner claims that the trial court erred

in finding that he did not have standing to assert a Fourth Amendment claim and in

finding that the Fourth Amendment claim itself lacked merit.

The Supreme Court has held that "where the State has provided an opportunity for

full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted

federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at trial."  *Stone v. Powell*, 428 U.S. 465, 494-95, 96 S.

Ct. 3037, 3052 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to

determine whether a defendant was given a full and fair opportunity to litigate a Fourth

Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the
> abstract, presents the opportunity to raise a fourth amendment claim.  Second,

5

the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

Petitioner's Fourth Amendment claims were the subject of an evidentiary hearing in state court. Following the evidentiary hearing, the trial court denied the motion to suppress. Petitioner then appealed his conviction to the Michigan Court of Appeals, presenting the Fourth Amendment claims presented herein. The Michigan Court of Appeals addressed the claims in a lengthy opinion and found no Fourth Amendment violation. *People v. Ward*, No. 232241 (Mich. Ct. App. April 15, 2003). The Michigan Court of Appeals held that the trial court did not err in finding that Petitioner lacked standing to contest the search. The Court of Appeals further held that even if Petitioner had standing to challenge the search, he failed to establish a Fourth Amendment violation because exigent circumstances justifying the search were shown. *Id.* at p. 2-3. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, again presenting his Fourth Amendment claims. The Michigan Supreme Court denied leave to appeal. *People v. Ward*, 469 Mich. 969, 671 N.W.2d 882 (Mich. Nov. 24, 2003).

Based upon the foregoing, this Court concludes that the state procedural mechanism provided an opportunity for Petitioner to raise his Fourth Amendment claims and that the presentation of those claims was not frustrated because of a failure of that mechanism. Consequently, these claims are not cognizable on habeas review.

**C.**

6

In his second claim for habeas relief, Petitioner alleges that his constitutional right to a speedy trial was violated. Petitioner was arrested on December 18, 1998. His trial commenced on October 23, 2000. Thus, the interval between his arrest and trial was approximately twenty-two months.

On November 12, 1999, the prosecutor requested a continuance. Defense counsel objected, stating that the proceedings had been adjourned numerous times, Petitioner's health was suffering because of his continued incarceration at the Wayne County Jail, one witness had moved to Alabama and another had disappeared. Defense counsel stated that a particular witness whom she previously had difficulty contacting was in court that day. The trial court judge questioned that witness, who agreed that he would return when the proceedings continued on November 23, 1999. In granting the continuance, the trial court judge noted that there "have been many continuances," but noted that the continuances could not all be attributed to one side or the other. (Tr., Nov. 12, 1999, pp. 6-7).

Ultimately, the trial commenced on October 23, 2000. On that date, prior to the start of trial, defense counsel filed a motion to dismiss based upon the alleged denial of Petitioner's constitutional right to a speedy trial. Defense counsel argued that only thirty-six days of the twenty-two months during which Petitioner awaited trial were attributable to the defense. Defense counsel argued that Petitioner was prejudiced by the delay because one witness moved out of state and another could not be located and the property at which the drugs were discovered had been destroyed. The trial court denied the motion, finding that part of the delay was attributable to motions filed by defense counsel,

7

and that Petitioner failed to promptly assert his right to a speedy trial.

The Michigan Court of Appeals held that Petitioner's right to a speedy trial was not violated, stating, in pertinent part:

> "In determining whether a defendant has been denied a speedy trial, four factors must be balanced: (1) the length of delay, (2) the reasons for the delay; (3) whether the defendant asserted his right to a speedy trial, and (4) prejudice to the defendant." [*People v. Mackle*, 241 Mich. App. 583, 602, 617 N.W.2d 339 (2000)].
>
> Defendant asserts that there was a twenty-two month delay between his arrest and his trial. However, he acknowledges that eight months of the delay was attributable to his motion to suppress. A delay over eighteen months "is presumed to be prejudicial and the burden is on the prosecution to prove lack of prejudice to defendant." *People v. Gilmore*, 222 Mich. App. 442, 460[,] 564 N.W.2d 158 (1997).
>
> The record reflects that the prosecution did not file any motions in this case. In addition to the eight-month delay caused by defendant's motion to suppress, there were delays due to defense counsel's health problems and other motions and requests for adjournments by defendant. Defendant asserts that most of the other delays occurred because of docket congestion and problems inherent in the court system. Although delays because of overcrowded dockets "'are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether defendant was denied a speedy trial.'" *Id.*, quoting *People v. Wickham*, 200 Mich. App. 106, 111[,] 503 N.W.2d 701 (1993). The record shows that defendant failed to object to these adjournments. In *Gilmore*, *supra* at 461, this Court noted that if the defendant had objected, "another judge may have been available to accept the case and proceed to trial."
>
> Moreover, defendant did not assert his right to a speedy trial until October 23, 1999. This was approximately ten months after his December 30, 1998 arrest. Defendant claimed that he was prejudiced by this delay because a witness had moved out of state, another witness could not be located, and the property at 6712 Seminole had been "damaged to the point where we can't get pictures that [in] any way reflect what it looked like in those days." However, the prosecution argued that these facts failed to establish prejudice. According to the prosecution, the building in question "burned down" by the time

defendant's motion to suppress was filed, the "missing' witnesses testified at a prior hearing, and there has been no showing that their testimony was material or that defendant has made any effort to locate them.  Because defendant failed to object to the adjournments of trial, was responsible for a large part of the delay, and was not prejudiced by the delay, dismissal is unwarranted.

*Ward*, slip op. at 3.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.  The United States Supreme Court has held that courts should consider the following four factors in determining whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514, 528, 92 S. Ct. 2182 (1972).

### 1.    Length of Delay

The length of the delay is a threshold requirement the Court must consider before addressing the additional *Barker* factors.  If the length of the delay is not "uncommonly long," the Court's inquiry ends.  *Doggett v. United States*, 505 U.S. 647, 651[,] 112 S. Ct. 2686, 2690 (1992).  A delay approaching one year is presumptively prejudicial.  *Id.* at 652 n.1, 112 S. Ct. at 2691 n.1.  In this context, the presumption of prejudice "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Id.*  If this threshold is satisfied, judicial analysis continues, and the length of the delay becomes

one factor in the analysis.  *Id* at 652, 112 S. Ct. at 2691; *United States v. Schreane*, 331

F.3d 548, 553 (6th Cir. 2003).  Respondent does not dispute that there was a delay of

twenty-two months between arraignment and trial.  Therefore, the length of the delay is

sufficient to trigger a speedy trial analysis and application of the remaining three *Barker*

factors.

### 2.      Reason for the Delay

The second *Barker* factor is the reason for the delay.  "The core task is

determining which party shoulders the balance of blameworthiness for th[e] delay."

*United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir.2001).

> [D]ifferent weights should be assigned to different reasons. A deliberate
> attempt to delay the trial in order to hamper the defense should be weighted
> heavily against the government.  A more neutral reason such as negligence or
> overcrowded courts should be weighted less heavily but nevertheless should
> be considered since the ultimate responsibility for such circumstances must
> rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531, 92 S. Ct. at 2192 (footnote omitted).  Government actions which

are tangential, frivolous, dilatory, or taken in bad faith weigh heavily in favor of a finding

that a speedy trial violation occurred. *United States v. Loud Hawk*, 474 U.S. 302, 315-17,

106 S. Ct. 648, 656 (1986).

In this case, the Michigan Court of Appeals held that eight months of the delay

were attributable to Petitioner's motion to suppress.  The Michigan Court of Appeals also

attributed additional delays to Petitioner because of defense counsel's health issues, and

"other motions and requests for adjournments by defendant."  *Ward*, slip op. at 3.  The

10

state court did not identify the length of delay attributed to Petitioner for these reasons. The state court further held that other delays occurred because of overcrowded dockets and scheduling difficulties.

Because the state court does not identify the specific time, other than the eight-month delay related to the motion to suppress, charged to Petitioner, the Court shall presume for this analysis that only eight months of the delay are attributable to Petitioner and the remaining fourteen months to the prosecution. However, Petitioner does not argue and the record does not support a finding that these delays were "[a] deliberate attempt to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. Thus, while this factor favors Petitioner, it does so only slightly because the delay attributable to the prosecution is, at most, the result of negligence rather than bad faith.

3.      Petitioner's Assertion of Right to Speedy Trial

Next, the Court considers whether Petitioner promptly asserted his right to a speedy trial. "The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. Likewise, a "[d]efendant's failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim." *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999).

The Michigan Court of Appeals held that Petitioner did not assert his right to a

11

speedy trial until October 23, 1999, approximately ten months after his arrest.[3]  This

Court agrees with the state court's holding that this tardy assertion of his speedy trial

rights weighs against Petitioner.

4.    Prejudice

Finally, a petitioner must show that substantial prejudice resulted from the delay.

*Schreane*, 331 F.3d at 557.  Prejudice may either be presumptive or actual.

Actual prejudice should be assessed in light of the following three defense

interests which the speedy trial right protects: (1) oppressive pretrial incarceration; (2)

anxiety and concern of the accused; and (3) the possibility that the defense will be

impaired. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193.

"Of these, the most serious is the last, because the inability of a defendant

adequately to prepare his case skews the fairness of the entire system.  If witnesses die or

disappear during a delay, the prejudice is obvious." *Id.*, 92 S. Ct. at 2193  "[If] the

government prosecutes a case with reasonable diligence, a defendant who cannot

demonstrate how his defense was prejudiced with specificity will not make out a speedy

trial claim no matter how great the ensuing delay."  *Schreane*, 331 F.3d at 559, quoting

*United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000).  When there is evidence of

---

[3]  This finding appears to be in error.  The trial court docket sheet reflects no activity on October 23, 1999.  On November 12, 1999, when the trial court decided to continue the hearing on Petitioner's suppression motion, Petitioner moved for dismissal of the charges against him on the basis of a speedy trial claim.  Thus, the Court finds that, contrary to the state court's holding, Petitioner first asserted his right to a speedy trial on November 12, 1999.  This error, however, does not impact the Court's analysis as it is a difference of only approximately three weeks.

12

negligence on the government's part, but no bad faith, "[judicial] toleration of such negligence varies inversely with its protractedness." *Doggett*, 505 U.S. at 657, 112 S. Ct. at 2693.

While Petitioner has alleged all three types of actual prejudice, and no doubt suffered from the oppression of his pretrial incarceration and the anxiety and concern of waiting for trial, he has not demonstrated specific or substantial prejudice in preparing his defense, and *Barker* prescribes a balancing of all of the factors. The Michigan Court of Appeals held that because the building in question was destroyed by the time Petitioner filed his motion to suppress, the additional delay before Petitioner was tried did not prejudice Petitioner. In addition, the Michigan Court of Appeals held that Petitioner failed to show that the two witnesses whose presence allegedly could not be secured because of the delay would have offered testimony material to Petitioner's defense. Petitioner has failed to present any argument to call into question the finding of the Michigan Court of Appeals with respect to whether the two missing witnesses would have provided testimony material to the case or whether the destruction of the building prejudiced the defense. Thus, the Court concludes that the finding of the Michigan Court of Appeals' that Petitioner suffered no actual prejudice was not contrary to or an unreasonable application of *Barker*.

The Court next considers whether the delay was sufficiently long to give rise to a presumption of prejudice. Prejudice is presumed where there has been a delay so excessive that it "presumptively compromises the reliability of a trial in ways that neither

13

party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655, 112 S. Ct. at

2693.[4]  Based on the facts and circumstances of this case, the portion of the delay

attributable to the government's negligence, which is at most fourteen months, does not

give rise to a presumption of prejudice. *See, e.g.*, *Schreane*, 331 F.3d at 559 (thirteen and

a half month delay attributable to the government's negligence did not give rise to a

presumption of prejudice); *United States v. Cook*, 181 F.3d 104 (6th Cir.1999)

(unpublished *per curiam* opinion) (sixteen months not presumptively prejudicial), *cert.*

*denied*, 528 U.S. 942 (1999).  When prejudice has been found, the government's delay

has typically been shockingly long. *See, e.g.*, *Doggett*, 505 U.S. at 657, 112 S. Ct. at 2693

(six years); *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (five and one-half

years); *United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (eight years); *see also*

*Barker, supra* (five year delay, with all but seven months attributable to the government,

was extraordinary, but did not violate the constitution, where defendant, who did not

assert his right until the day of trial, did not want a speedy trial).

The Michigan Court of Appeals, although not specifically citing *Barker,* applied

the standard articulated therein, in denying Petitioner's speedy trial claim.  The Court

finds that its application of *Barker* was neither contrary to nor an unreasonable

application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1).  The delay, while long,

---

[4]  "'Presumptively prejudicial' for purposes of triggering the *Barker* four-factor inquiry is different from 'presumptively prejudicial' for purposes of assessing the prejudice prong." *Maples v. Stegall*, 427 F.3d 1020, 1030 (6th Cir. 2005).  Prejudice is presumed for purposes of triggering a *Barker* analysis when the delay has approached one year; prejudice is presumed in the context of the prejudice prong when the delay was excessive.  *Id.*

14

was not the result of the prosecutor's bad faith or an attempt to gain a tactical advantage. Petitioner's assertion of his right to a speedy trial was not prompt. Petitioner failed to show actual prejudice as a result of the delay and the delay was not sufficiently long to warrant the presumption of prejudice. Therefore, habeas relief is denied on this claim.

**D.**

Next, Petitioner claims that he was denied a fair trial by the introduction of inflammatory evidence. Specifically, Petitioner objects to the admission of drugs and weapons not connected to his charged possession of a single bag of cocaine, and testimony regarding the monetary value of drugs seized from the house.

Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

It is well-established that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991), *quoting Louis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990). The Sixth Circuit has

15

held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

The Michigan Court of Appeals, although finding that the claim was not properly preserved, nevertheless discussed the merits of the claim. The state appellate court held that the evidence was not clearly irrelevant and served to support the credibility of prosecution witnesses. In addition, the state court concluded that, given the overwhelming evidence that defendant possessed cocaine, the admission of the evidence did not affect Petitioner's substantial rights. *Ward,* slip op. at 4. This Court concurs with the state court's finding that admission of this evidence did not deny Petitioner his fundamental right to a fair trial. Accordingly, the Court denies habeas relief on this claim.

### E.

Finally, Petitioner claims that the trial court denied him a fair trial when the trial court judge gave a cautionary jury instruction which denigrated defense counsel and implied that defense counsel was attempting to secure an acquittal by lying to the jury.

The exchange that precipitated the jury instruction to which Petitioner objects involved defense counsel's questioning of police officer Jeremy Moreland. Defense

16

counsel asked Mr. Moreland whether James Sanders, another individual who was in the home on Seminole when police entered, had been "found not guilty of possession of narcotics." (Tr., Vol. III, p. 89). The prosecutor objected to the question on the grounds that it was irrelevant and inaccurate. After a sidebar, the trial court judge gave the following instruction to the jury: "Ladies and gentlemen of the jury, I'm going to instruct you to disregard the last question that related to another individual. It is stricken from the record." *Id.*

Testimony continued for approximately two more hours that afternoon, and three additional witnesses were called after Officer Moreland's testimony concluded.

The next morning, the prosecutor requested another instruction regarding James Sanders in which the court would advise the jury that Sanders had not been acquitted in a prior proceeding but, in fact, was convicted of an included offense and would further advise the jury that the question posed to Officer Moreland was misleading. Defense counsel objected to the proposed instruction and requested that the court instruct the jury that Mr. Sanders was found not guilty of the charge of possession of a controlled substance, but was convicted of a misdemeanor offense. Defense counsel also objected to the use of the word "misleading." Over defense counsel's objection, the trial court gave the following instruction:

> Ladies and gentlemen. Before we resume the taking of testimony, it is
> important that I give you an instruction. You will recall I said I will be giving
> you instructions throughout the course of the trial, at the beginning and the end
> and perhaps in the middle. I will now give you a special instruction and that
> is: A question was asked by defense counsel of Officer Moreland regarding

17

whether a codefendant, James Sanders, was found not guilty of possession in a prior trial which involved some of the same facts as those presented in this trial.

The question was misleading and improper. I'm taking judicial notice of the fact that Mr. Sanders was not acquitted in the prior proceeding but, in fact, was convicted of an included offense.

In any event, the fact of a prior acquittal or conviction involving others in the same house in a separate proceeding must be of no consequence to you as jurors in this matter.

You are the final judges of the facts in this case and you must decide who and what you believe based on the testimony presented in this trial only.

(Tr., Vol. V, p. 11).

An impartial judge is a necessary component of a fair trial. *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625 (1955). This Court is guided by the standard established by the Supreme Court in *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147 (1994), in addressing claims of judicial bias. In *Liteky*, the Supreme Court explained the measure of judicial conduct as follows:

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* at 554, 114 S. Ct. at 1157 (emphasis in original).

The Supreme Court cautioned that "expressions of impatience, dissatisfaction,

18

annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," do not establish bias or partiality. *Id.* at 556, 114 S. Ct. at 1157. Further, "[a] judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." *Id.*, 114 S. Ct. at 1157.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, rejected Petitioner's contention that the trial court's conduct was critical of defense counsel's style, ability, integrity, and professionalism. *Ward*, slip op. at 4. The court of appeals held that the trial judge's instruction "did not imply that counsel was a liar or that she was using underhanded tactics." *Id.*

The Court agrees with Petitioner that labeling defense counsel's question misleading was inappropriate. The question was never answered and because the Court sustained the objection and told the jury to disregard it, the Court should not have instructed the jury that defense counsel asked a "misleading" question. However, Petitioner has failed to show that this isolated instruction evidenced a judicial bias which deprived Petitioner of his right to a fair trial. The instruction was isolated and, although its use of the word "misleading" was ill-advised, it did not "reveal . . . a high degree of favoritism or antagonism." *Liteky*, 510 U.S. at 554, 114 S. Ct. at 1157. Thus, the Court concludes that the state court's decision that no judicial misconduct was shown is not contrary to or an unreasonable application of Supreme Court precedent.

**IV.**

19

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is

**DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:

Charles Ward
#180915
Ryan Correctional Facility
17600 Ryan Road
Detroit, MI 48212

Brenda E. Turner, AAG